IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUYNH NGUYEN,<br><br>Petitioner,<br>v.<br><br>J.L. JAMISON, et al.,<br><br>Respondents. | CIVIL ACTION<br>NO. 26-7005 |

**OPINION**

**Slomsky, J.** **November 25, 2026**

## I. INTRODUCTION

Before the Court is Petitioner Quynh Nguyen's Petition for a Writ of Habeas Corpus (Doc. No. 1). For reasons that follow, the Petition (Doc. No. 1) will be denied.

## II. BACKGROUND

Petitioner Quynh Nguyen ("Petitioner") is a citizen of Vietnam who entered the United States on April 23, 1991. (Doc. No. 1 at 1.) Petitioner later obtained lawful permanent resident status. (Id.) However, since his entry to the United States, Petitioner has had numerous encounters with law enforcement, including multiple federal controlled substance convictions. (See Doc. No. 7 at 2.)

By virtue of his various encounters with law enforcement Petitioner has also had multiple interactions with United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 1 at 7-8.) While serving his criminal sentence, ICE placed Petitioner into removal proceedings, charging

him as deportable under 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1227(a)(2)(B)(i).[1] (Doc. No. 7 at 3.) He was ultimately ordered removed by an Immigration Judge on November 12, 2013. (Id.) In 2016, after Petitioner served his criminal sentence, ICE arrested and detained Petitioner. (Doc. No. 1 at 2.) However, ICE was unable to deport Petitioner to Vietnam because of the Vietnamese Embassy's refusal to issue travel documents for him. (Id. at 8.) As such, Petitioner was released from custody and placed on an Order of Supervision ("OSUP"). (Id.)

On June 10, 2026, ten years after his initial detention, ICE revoked the OSUP and Petitioner was arrested while attending a regularly scheduled check-in under the conditions of his release. (Id. at 3.) Petitioner is currently at the Federal Detention Center in Philadelphia. (Id. at 1.)

On September 11, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus (Doc. No. 1). On November 4, 2026, Respondents filed a Response in Opposition (Doc. No. 7). On November 17, 2026, Petitioner filed a Reply (Doc. No. 8). Finally, on November 24, 2026, Respondents filed a Notice of Supplemental Evidence (Doc. No. 9.)

---

[1] Section 1227(a)(2)(A)(iii) provides:

> Any alien who is convicted of an aggravated felony at any time after admission is deportable.

8 U.S.C. § 1227(a)(2)(A)(iii).

Section 1227(a)(2)(B)(i) provides:

> Any alien who at any time after admission has been convicted of a violation (or conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance . . . is deportable.

8 U.S.C. § 1227(a)(2)(B)(i).

## III. STANDARD OF REVIEW

A federal district court may grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). At its core, habeas is "a remedy for unlawful executive detention." Reyes v. Jamison, No. 26-1324, 2026 WL 970231, at *2 (E.D. Pa. Apr. 9, 2026) (quoting Munaf v. Geren, 553 U.S. 674, 693 (2008)). Moreover, habeas is "regularly invoked on behalf of noncitizens, particularly in the immigration context." Id. (quoting I.N.S. v. St. Cyr, 533 U.S. 289, 305 (2011) (superseded by statute on other grounds)). Demonstrating that he or she is being held in violation of the Constitution or federal law is the petitioner's burden to bear. Id. (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)). Notably, the Fifth Amendment of the United States Constitution guarantees noncitizens seeking to "forestall or terminate removal proceedings 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" Serrano-Alberto v. Att'y Gen. United States, 859 F.3d 208, 213 (3d Cir. 2017) (quoting Dia v. Ashcroft, 353 F.3d 228, 239 (3d Cir. 2003) (en banc)).

## IV. ANALYSIS

Petitioner argues he is detained in violation of the Immigration and Nationality Act ("INA"), the Due Process Clause of the Constitution, and the Accardi Doctrine. (Doc. No. 1 at 14-16.) Specifically, Petitioner contends that his detention has extended beyond the period reasonably necessary to effectuate removal and that he was afforded inadequate process when his OSUP was revoked. (Id. at 4.) The Court will address each argument in turn.

### A. Petitioner's Detention is Lawful Under the INA and Zadvydas

First, Petitioner challenges the duration of his re-detention, arguing that he is being detained longer than the statutory removal period of ninety (90) days set forth in 8 U.S.C.

§ 1231(a). (Id. at 4.) Further, he argues that even if his continued detention is authorized under the INA, it nevertheless violates his constitutional rights because removal of Petitioner to Vietnam in the near future is not foreseeable. The Court disagrees.

The parties do not dispute that Petitioner is being detained pursuant to 8 U.S.C. § 1231(a). (Id. at 5; Doc. No. 7 at 6.) Section 1231(a) of the INA permits detention of noncitizens who are subject to a final order of removal. 8 U.S.C. § 1231(a). Section 1231 requires the Government to remove the noncitizen within a ninety-day "removal period." Id. § 1231(a)(1)(A). During the ninety-day removal period, detention is mandatory. See id. § 1231(a)(2). After the mandatory detention periods expires, the Government may continue to detain removable aliens when, for example, they are found to be deportable under 8 U.S.C. § 1227(a)(2). Id. § 1231(a)(6). As noted previously, Section 1227(a)(2) declares aliens removable based on convictions for various crimes, including aggravated felonies and controlled substance violations. 8 U.S.C. §§ 1227(a)(2)(A)(iii), (B)(i).

Here, Petitioner has been ordered removed due to his aggravated felony and controlled substance convictions, pursuant to Section 1227(a)(2). (Doc. No. 7 at 10.) As such, the governing statute authorizes Petitioner's continued detention beyond the mandatory ninety-day period. See 8 U.S.C. § 1231(a)(6). Thus, Petitioner's detention does not violate the INA.

Moreover, Petitioner's assertion that his continued detention is unconstitutional because his removal is not reasonably foreseeable is without merit. When removal is not effectuated within the statutorily prescribed ninety-day window, Section 1231(a)(6) does not specify precisely how long detention may continue. Johnson v. Artega-Martinez, 596 U.S. 573, 579 (2022). However, in Zadvydas v. Davis, the United States Supreme Court recognized a six-month presumption of reasonableness for periods of detention during the post-removal period. 533 U.S. 678, 701 (2001).

Petitioner has been detained since June 10, 2026, approaching the end of the six-month "presumptively reasonable" period articulated in Zadvydas. But detention after this six-month period is not per se unconstitutional. Rather, Zadvydas instructs that continued detention is justified after this period only where deportation of the noncitizen is reasonably foreseeable. Id. In that regard, Respondents note that on October 22, 2026, ICE made a request seeking the necessary travel documents to finalize Petitioner's removal. (Doc. No. 7 at 14.) And on November 24, 2026, Respondents filed a Notice of Supplemental Evidence, informing the Court that they received from the Vietnamese government a copy of Petitioner's Vietnamese passport on November 23, 2026. (Doc. No. 9 at 1.) In addition, the apparent changed relationship between Vietnam and the United States—one in which Vietnam is now accepting deportations—illustrates that ICE may be able to effectuate Petitioner's removal in the reasonably foreseeable future. (Id.) Thus, Petitioner has not demonstrated that his continued detention is indefinite or that deportation is unforeseeable, and therefore, the argument that his detention violates his due process rights fails. Consequently, Petitioner's continued detention comports with the INA and Zadvydas.

**B. The Court Lacks Jurisdiction to Review Petitioner's OSUP Revocation Claim**

Next, Petitioner argues that when ICE revoked his OSUP and re-detained him in June 2026, it violated its own regulations under 8 C.F.R. § 241.13, and the Due Process Clause. (Doc. No. 1 at 13.) Specifically, Petitioner asserts he was not provided with proper notice of the reasons for revocation until July 9, 2026—one month after he was re-detained. (Id. at 3.) Because Section 1252(g) divests this Court of subject-matter jurisdiction to reach the merits of Petitioner's challenge involving ICE's decision to revoke his OSUP and re-detain him, the Petition (Doc. No. 1) will be denied on this claim as well.

Congress has substantially limited judicial review of immigration matters. See generally 8 U.S.C. § 1252. Specifically, Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including . . . any . . . habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The United States Supreme Court held in Reno v. Am.-Arab Anti Discrimination Comm. that Section 1252(g) must be read "narrow[ly]" since it does not cover "the universe of deportation claims." 525 U.S. 471, 482, 487 (1999). In this regard, the Court recognized that the provision applies only to three discrete discretionary actions that the Attorney General may take: (1) the decision to commence proceedings; (2) adjudicate cases; or (3) execute removal orders. Id. at 487. As such, if one of these three decisions is challenged, federal district court jurisdiction is divested, coinciding with Section 1252(g)'s goals of insulating prosecutorial discretion from judicial review. Thus, the issue here is whether Petitioner is challenging Respondents' decision to commence a proceeding, adjudicate a case, or execute a removal order against him. If so, the Court is barred from considering Petitioner's claim for lack of jurisdiction.

The Third Circuit Court of Appeals resolved the issue of whether jurisdictional bars apply to claims challenging OSUP revocation procedures provided to a noncitizen in Tazu v. Att'y Gen. United States, 975 F.3d 292 (3d Cir. 2020). There, the petitioner challenged his re-detention on the basis that the Government failed to give him proper notice and an informal hearing as required by 8 C.F.R. § 241.4(l)(1) when they revoked his period of supervised release. Id. at 298. The Third Circuit applied the jurisdictional bars pursuant to Sections 1252(g) and (b)(9) in tandem to prevent judicial review of the petitioner's claim, finding that while the claim did not "challenge

the Attorney General's decision to execute his removal order, it [did] attack the action taken to execute that order." Id.

Here, Petitioner's claim directly mirrors the claim addressed in Tazu because he is also challenging ICE's failure to provide proper notice and an informal hearing upon revocation of his OSUP. As such, Section 1252(g) divests this Court of jurisdiction to consider Petitioners' challenge to his re-detention because his claim arises from Respondents' decision to execute a removal order against him.[2]

As noted previously, the text of Section 1252(g) prevents judicial review of the Attorney General's "decision or action . . . to . . . execute [a] removal order[.]" 8 U.S.C. § 1252(g). And the "verb 'execute' means 'to perform or complete.'" Tazu, 975 F.3d at 298 (quoting Execute, Black's Law Dictionary (11th ed. 2019)). Similar to the re-detention of the petitioner in Tazu, in this case, to perform or complete Petitioner's removal, the Attorney General exercised his discretion to detain Petitioner. To that end, Petitioner's detention is part and parcel of the execution of the removal order against him. And re-detaining Petitioner "was simply the enforcement mechanism the Attorney General picked to execute his removal." Tazu, 975 F.3d at 298-99. Thus, Petitioner's challenge to the procedures surrounding his re-detention is, in effect, an attack on the execution of his removal order.[3] Consequently, the Court cannot reach the merits of whether

---

[2] Importantly, the Tazu court recognized that jurisdictional bars set forth in Section 1252 would not preclude judicial review to a challenge to the length of an alien's confinement because such a challenge is "not directly about removal." Tazu, 975 F.3d at 299; see also Roe v. Oddo, No. 25-128, 2025 WL 3030692, at *13 n. 18 (W.D. Pa. Oct. 30, 2025) (finding that Tazu did not preclude judicial review over a petitioner's Zadvydas challenge to the length of his detention). However, as noted supra, while the Court is not precluded from reaching the merits of Petitioner's Zadvydas claim challenging the length of his detention, this claim is nevertheless without merit because removal is reasonably foreseeable.

[3] In Tazu, the Third Circuit noted that a "brief door-to-plane detention is integral to the act of

Petitioner was afforded adequate process under applicable regulations because Tazu instructs that Section 1252(g) precludes judicial review of this issue. And because the Court's jurisdiction over Petitioner's claim is divested under Section 1252(g), the Court need not reach the issue of whether the jurisdictional bar set forth in Section 1252(b)(9) also applies to preclude judicial review of the claim.[4] Therefore the Petition (Doc. No. 1) will be denied as to Petitioner's claim challenging the procedures followed by ICE when the OSUP was revoked.

## V. CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus (Doc. No. 1) will be denied. An appropriate Order follows.

---

'execut[ing] [a] removal order[].'" Tazu, 975 F.3d at 298 (quoting Am.-Arab, 525 U.S. at 482). However, the court gave no indication that the duration of the detention impacted its ruling that the jurisdictional bars of Sections 1252(g) and (b)(9) prevented review of the petitioner's challenge to the procedures given when his OSUP was revoked.

[4] While the Third Circuit provided dual reasoning that both jurisdictional bars under Sections 1252(g) and (b)(9) were applicable, it found that either provision, on its own, would be sufficient to divest jurisdiction over the claim. See Tazu, 975 F.3d at 299 ("So whether we analyze it under § 1252(g) or § 1252(b)(9), the outcome is the same: the District Court lacked jurisdiction to hear it.").